Warden, J.
The object of this bill is to reverse a decree of the late Supreme Court in bank, certified to the Supreme Court in Clermont county, and there entered.
*In that proceeding, Huber and the town of Williamsburg [400 were complainants, and Gazley had been enjoined from tearing what were claimed to bo public buildings, and from selling or disposing of what was claimed to be the public square, in the occupancy of Gazley, and which the latter pretended had reverted to General Lytle on removing the county-seat from Williamsburg.
The court found that the ground “ did not revert to the said William Lytle on the removal of the county-seat from Williams-burg, but that the people of said town are fully entitled, and have good right, to the use and benefit of said public square and the *401 buildings thereon, except as hereinafter excepted, and are entitled to have the same secured for their benefit.” It was therefore ordered, adjudged, and decreed “ that the injunction allowed herein be and the same is hereby made perpetual, and that the people of the said town of Williamsburg do have the use and benefit of said public square and buildings thereon, except such buildings, if any, as have been erected by the said Gazley, free from all claims to and rights in the same by the said defendants forever.”
The reasons on which the Supreme Court founded this decree appear in the opinion of Spalding, J., reported in 18 Ohio, 22. They were substantially as follows: The court was satisfied that when the town was laid out, Lytle made a plat, numbering all the lots, fairly displaying the streets and alleys, and having the words “public square” written upon the space representing the ground in controversy; that this plat, having been made in ’96 or ’97, was not by law required to be then recorded; and, in the language of Judge Spalding, “ it is lost sight of, in the evidence, for many years;” that a second and formal dedication, made by General Lytle when the removal of the county-seat was threatened, while it could not be allowed to control the use of the town under the original dedication, furnished evidence that there had been such original plat as that referred to, and that it had been recorded in due season. The 401] court says : “ It is *fair to presume, then, that after the act of 1800 took effect, and within the time that would save him from the penalty, General Lytle placed in the recorder’s office of Clermont county the original plat of his town, or a copy thereof, for record. This plat was sewed into the record-book, in comformity with a practice which obtained in many parts of the state, in its first settlement, and has thus been preserved to this day.” And again: “ Here we find the important admission, made by General Lytle, that the plat of this town had been before recorded in duo season, agreeable to law. If in due season and agreeable to law, it must have been done after the act of 1800 took effect, and within twelve months thereafter, to wit, anterior to the month of May, 1802. It is not pretended that the records of Clermont county show any plat of Williamsburg anterior to the plat of 1815, save only the plat stitched in book C, and first seen in the years 1813 and 1814 by General Richard Collins.”
The court also notices the reference to this plat in “ many ancient deeds;” its general recognition in 1814 as the true plat of the *402 town ; the user by the inhabitants of Williamsburg, and the perfect compatibility of their possession and claim with those of the county. And the improbability of any original intention on the part of Lytle to dedicate for county purposes, is thus stated by the court: “At the time when this land was thus dedicated to the public' use, Clermont county had no existence, and therefore the claim that Gen. Lytle originally designed it as a site for county edifices, so long as Williamsburg should remain the county-seat, has no foundation in fact.” The fact that, as early as 1799, the ground in controversy was called the public square, is also considered by the court as significant of what was understood to be the object of Lytle’s dedication.
Finding aright in the then complainants to a decree establishing the dedication, and preserving the public use, the court thus disposes of the claim made under the occupying claimant law: “ The defendants are not warranted by the facts in setting up a want of notice, and we know of no rule *which will justify us in [402 charging upon the public square the consideration money which' they paid, or the expense which they have incurred in making improvements thereon.”
Against the conclusions of fact, formed by the court in disposing of the leading questions in the case, counsel for the plaintiffs in this bill of review have urged many arguments and suggestions which are worthy of attention, and have received it.
It is said that “ the material facts upon which the court proceeded are without foundation in the evidence.” We can not notice in this opinion all that counsel have said to show what is here asserted. The chief points, however, are the following:
The user by the inhabitants of Williamsburg is said to have been slight in itself, and only such as was permitted by the sheriff and other authorities of the county. The answer of Gen. Lytle to a bill filed against him by the commissioners of Clermont county, who claimed rights in the land, is said to have been overlooked or disregarded by the judge who delivered the opinion of the Supreme Court in bank. It is objected that although “the most authentic history, as well as the most connected,” of the facts to be considered in the question of dedication, is to be found in that answer, “Judge Spalding makes not the slightest allusion to this important source of evidence.” The fact that the plat held by the court to be the original evidence of dedication, was never copied *403 into the records, being merely stitched into a book to which it did not belong in the order of recording, together with the evidence of Gen. Lytle respecting it in the sworn answer referred to, is said to explain the statement of Lyt'le, in a note appended to a second plat made in 1815, that “the plat of the town had been before recorded, in due season, agreeable to law,” so as to show that the particular paper found in the records was not that made by Lytle himself. A different construction from that adopted by the court of the recitals and inferences in Lytle’s deeds is plausibly presented 408] as the true one. On the subject of what Lytle *could have intended in laying out the town, it is said that the objection of the court is purely technical — that “the country east of the Little Miami river was not within the boundaries of Hamilton county, as at first defined. It was annexed afterward, for temporary convenience, and until it could acquire a population sufficient to authorize a now county between the counties of Hamilton and Adams. In view of this fact, and of the increase of settlements in that region, Gen. Lytle selected the site of "Williamsburg as that of a county-seat soon to be established.” That the declaration of Lytle, in 1815, was made for the benefit and at the instance of the people of Williamsburg, who then recognized the right of the county, is also urged. The town o.f Williamsburg is said to be claiming in privity to the county commissioners, and the abandonment of the latter of their claim, is much relied on in the argument. The testimony taken to show the understanding and behavior of all parties, Lytle, the county authorities, and the people of Williarhsburg, is drawn into a light different from that in which the court thought it ought to be regarded.
It is not surprising that through the ability and ingenuity of counsel, it appears that transactions, most of which occurred fully and all of them nearly half a century ago, are not proven in this casepso as to be beyond doubt as to the order of their occurrence, their importance or insignificance, their certainty or uncertainty.
But this is not enough.
The rule recognized in Tracey v. Sackett, 1 Ohio St. 54, that, upon a bill of review, a mere difference of opinion on the weight of evidence, between the court which pronounced, and that which reviews a decree founded on that evidence, will not warrant the reversal of the decree, is too reasonable in itself, and too well established, to be now brought in question. It is not intended by the law on this subject, to allow two trials of the same cause, as a mere matter of *404, 405 common right, and of course ; at least as much respect should b.e given to the finding of a court, as to that of a *jury, and a [404 very clear case of error, in estimating the facts, ought to be shown before the solemn decree of a competent tribunal should be set aside.
On looking into the facts in the case before us, we find no such case made out. That the question whether the plat found out of its order, not written into the book, but merely stitched between its fly-leaves, was the original plan or diagram made by General Lytle, or some unauthorized substitute therefor, is not free from all doubt, may be admitted. Nor is it to be denied, that a difference of opinion may fairly arise, when wTe come to inquire whether Lytle intended to dictate for any other than a county use. The answer of General Lytle to the bill of the commissioners, if it could be regarded in this case at all, might militate against the supposition that he was aware of any dedication for town purposes. But it can not avail his grantees against the original complainants, who had no representative in the case referred to ; and if it could, we might differ as to the effect of its statements of fact. To some, it might seem that General Lytle meant to ignore the first plat; to others, it might appear that no question of a town right being involved in the case in which he was required to answer, he did not find it necessary to place the particulars of the dedication, in this respect, before the court. And it may be that counsel aré right in the view they take of this part of the case, when they say they “ have no doubt that the original town-plat was delivered for record by General Lytle, in obedience to the act of December 6, 1800, and that the recorder neglected to copy it into the appropriate book, or even to preserve it with proper care.” The paper found stitched into the book of records, may have been a “ mere draft made by the recorder or some of his deputies for convenient reference.” When it is admitted, however, that the facts in this case might have been estimated in accordance with these arguments and suppositions of counsel, it is only admitted, that the case was one of doubt and dificulty. After a careful ^examination, we find no reason to set aside [405 the finding of the court, that the weight of evidence established the identity of the paper as the original plat of dedication, and that the user of these lands, and the conduct of all parties, have been such as to secure and preserve to the people of Williamsburg whatever rights Lytle intended to confer.
*406 Thus, respecting the conclusion of the court on the facts, the law applied to them appears to have been correctly laid down on all the queslions relating to the dedication.
When we come to the refusal of such relief as is allowed at law to occupying claimants, there may be more difficulty in agreeing to the conclusion of the court. For one, I am not satisfied that G-azley did not purchase in good faith. I can not think there was such notice to him of the dedication and the use under it, as to withdraw his claim, had this been an ejectment, from the benefit of the statute on this subject. But when we remember that the origin of the provisions of our statute for the benefit of occupying claimants was in purely equitable principles, and that those provisions were made in order that the successful claimant should not have the benefit of improvements without paying for them, we must allow that the court was warranted to deny compensation for erections on this public land, which could not be of public benefit. The case may be a hard one for the plaintiffs in this bill of review, but their equity was not such as to charge the town of Williams-burg with what (while it may have been valuable to them) was certainly useless, if not hurtful, to the inhabitants of the town.
On all the questions decided in 18 Ohio we hold that the decree of the court is free from error.

Bill dismissed.